# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FAYETTE GRANDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV1689MLM |
| ) | |
| CITY OF ST. LOUIS, et.al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion for Summary Judgment filed by Defendant City of St. Louis (the "City") and Defendant Bettye Battle-Turner ("Defendant Turner") (jointly, "Defendants"). Doc. 17. Plaintiff Fayette Granda ("Plaintiff") has filed a Response. Doc. 21. Defendant has filed a Reply. Doc. 26. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 6.

## UNDISPUTED FACTS[1]

Defendant Turner is currently a practicing Attorney at Law and a member of the Missouri Bar. She was formerly a Municipal Judge for the Municipal Court, a Division of the 22nd Judicial Circuit Court, State of Missouri, City of St. Louis. Defendant Turner was first appointed as a provisional Municipal Court Judge by the Honorable Mayor Clarence Harmon, City of St. Louis, Missouri, in approximately1999. Defendant Turner was appointed as a Municipal Court Judge for the Municipal Division of the 22nd Judicial Circuit Court for the State of Missouri, City of St. Louis, by the Honorable Mayor Francis Slay, City of St. Louis, Missouri, in approximately April 2001.

---

[1] The facts are undisputed unless otherwise stated.

Defendant Turner was lawfully elected as the Administrative Judge for the Municipal Division of the 22nd Judicial Circuit Court for the State of Missouri, City of St. Louis, and served in that position in 2003 and 2004. Among other things, as the Administrative Judge, Defendant Turner was responsible for handling truancy cases which are cases whereby the parents of truant students were charged with a municipal ordinance violation.

St. Louis City Ordinance 62297 (the "Truancy Ordinance"), as codified in St. Louis City Code 15.120.030, prohibits parents from knowingly permitting a child to absent himself from attendance at school.[2] The Truancy Ordinance provides for not less than a twenty-five dollar a day fine for violators.

Defendant Turner first became familiar with Plaintiff in the spring of 2002 when Plaintiff came under Defendant Turner's jurisdiction by virtue of the allegation made by prosecutorial information and police summons regarding an alleged violation of the City of the Truancy Ordinance. Plaintiff had been charged with unlawfully permitting her daughter, Tammy Granda, who was born December 10, 1986, to be absent from attendance at school in violation of the Truancy Ordinance. Pursuant to a summons, Plaintiff appeared before Defendant Turner on or about June 10, 2002, at which time

---

[2] Ordinance 62297 states, in relevant part:

SECTION ONE. No parent ... in this city having charge, control or custody of a child between the ages of seven and sixteen years of age shall, without excuse or exemption, knowingly permit said child to absent himself from attendance at a public ... school on such dates, and during such hours, as the school may be regularly in session. Such parent ... shall be deemed to have knowledge of a child's unexempted, unexcused absence from school after having received notification of same from a police officer or school representative.

SECTION THREE, PENALTY CLAUSE. Any person convicted of a violation of this section shall be fined in an amount of not less than $25.00. Each day that any violation hereunder continues shall constitute a separate offense subject to the penalty provided in this section.

she was represented by counsel. Defendants contends that Plaintiff entered a guilty plea on this date and support this allegation with affidavits. Def. Fact, No. 15; Def. Ex. 1, Def. Aff., ¶11; Def. Ex. 3, Barnes Aff. Plaintiff does not remember entering a guilty plea and denies that she entered a plea. Pl. Resp. Def. Fact, No. 15. Court records, however, reflect that Plaintiff, in fact, did enter a guilty plea on June 10, 2002. Def. Ex. 3, City Court Docket Sheet.[3]

Plaintiff's case was continued to September 18, 2002, in order to monitor Tammy's school attendance. Tammy's school attendance would ultimately determine the punishment for the Truancy Ordinance violation because the punishment is based on a per-day fine. See n. 1.

On September 18, 2002, Plaintiff again appeared before Defendant Turner as scheduled and was still represented by counsel who appeared with her. Plaintiff's case was continued due to continuing truancy problems. The court ordered on this date that "the family ... participate with the court staff or they may be subject to charges for contempt of court." [4] Pl. Ex. 4. According to social service notes, on October 25, 2002, Plaintiff, her husband, and their lawyer appeared before Defendant Turner and requested the matter be continued; the caseworker advised the court that the matter should not be continued due to the severity of the issues; the caseworker advised Defendant Turner that no progress had been made in the case and of Plaintiff's inability to control Tammy; Defendant Turner found Tammy in contempt of court; the court encouraged the Grandas to file charges against Tammy for injuring Plaintiff; and Plaintiff "reluctantly" filed charges against Tammy

---

[3] While Plaintiff disputes that she plead guilty, Plaintiff does not deny that ultimately she was found guilty of violating the Truancy Ordinance.

[4] Also, on September 18, 2002, Tammy Granda was ordered to participate in therapy, attend a jail site review, and attend school every day. She was further ordered not to use force against her parents at any time.

3

to assure that Tammy's child, Anthony, "would be safe." Pl. Ex. 5. According to an affidavit of a case worker, Plaintiff dropped charges against Tammy on October 29, 2002. Pl. Ex. 10A at 436.

Tammy Granda continued to have problems with her attendance at school. On December 6, 2002, Plaintiff, her husband, counsel, and various social workers appeared before Defendant Turner [5] and Defendant Turner issued an Order which states, in relevant part, as follows:

> Court finds that Defendant[6] has been charged with violation(s) of the Revised Ordinances of the City of St. Louis. Defendant has *previously failed to appear in Court without just cause* to answer to said charges and a warrant was issued for the Defendant's arrest. ... Defendant is remanded to the custody of the City Marshall and shall be delivered by the City Marshal to the Court [as] ordered below. ... Defendant shall return to [court ] ... on 1-20-03.

Pl. Ex. 8A (emphasis added).

Also, on this date Defendant Turner issued an Order which states that Plaintiff is "ordered to the MSI [the Medium Security Institution for the City of St. Louis] until 1-21-03." Pl. Ex. 8B. Social Worker Brumley testified in her deposition that on December 6, 2002, in the presence of the Grandas' lawyer and Social Worker Brumley, Defendant Turner noted that Mr. Granda and Plaintiff had not abided by the court's previous order and said that there was "no other recourse than to incarcerate" the Grandas. Brumley Dep. at 45-46. Brumley further testified that she and the lawyer pleaded with Defendant Turner not to incarcerate the Grandas and that Defendant Turner agreed not to incarcerate Mr. Granda. Brumley Dep. at 49. Defendant Turner contends, and Plaintiff denies, that Plaintiff was incarcerated for contempt of court. Def. Facts, No. 25, 27. Plaintiff contends that the

---

[5] A Missouri Municipal Court is not a court of full record and, as such, it is not required to maintain "verbatim record[s]." Mo. Rev. Stat. § 476.010. ("[M]unicipal divisions of the circuit courts shall not be considered courts of record, regardless of whether or not a verbatim record of proceedings before the division is kept.).

[6] "Defendant" in the Order of December 6, 2002, is the plaintiff in the matter under consideration, Fayette Granda.

4

court's Order states that she was charged with violation of the Truancy Ordinance, that the Order does not indicate that she was incarcerated for contempt of court, and that she was incarcerated for violating the Truancy Ordinance. Pl. Resp. to Def. Facts, No. 23. While the court is of the opinion that the facts establish that Plaintiff was incarcerated for being in contempt,[7] for purposes of summary judgment only, the court will view the facts in the light most favorable to Plaintiff and will assume that Plaintiff was incarcerated for violating the Truancy Ordinance.

Plaintiff was allowed to return home for the holidays, from approximately December 24, 2002 until shortly after the New Year of 2003, when she was returned to MSI. Plaintiff appeared before Defendant Turner again on or about January 21, 2003, at which time Plaintiff was released from custody. At no time did Plaintiff, Plaintiff's counsel, or anyone else acting on or behalf of Plaintiff file a petition for writ of habeas corpus, a motion or other process to relieve Plaintiff of the contempt, order her release, or seek to change the status of Plaintiff other than the aforementioned holiday release. At no time during the Municipal Court proceedings was the issue of the jurisdiction of Defendant Turner challenged, questioned, or at issue.

On December 6, 2002, both Tammy Granda and her child, Anthony Granda, were placed into protective care. Anthony was placed at the Annie Malone Children's Home. Pl. Fact, No. 87-88. Plaintiff testified in her deposition that Tammy voluntarily gave up her parental rights to Anthony about a year after Plaintiff was incarcerated; that Plaintiff did not agree with that decision; that Plaintiff tried to counsel Tammy not to make the decision to relinquish her parental rights; and that

---

[7] The court notes that the following establishes that Plaintiff was incarcerated for being in contempt of court: the December 6, 2002 Order states that Plaintiff failed to appear in court and that Social Worker Brumley testified that, prior to incarcerating Plaintiff, Defendant Turner referenced that Plaintiff failed to abide by the court's previous order and that she had no other recourse other than to incarcerate Plaintiff.

5

Plaintiff became involved with trying to get custody of Anthony in the early part of 2003. Pl. Dep. at 16-21.

Mo. Rev. Stat. § 479.070 (2004) provides as follows regarding a State judge's authority:

> The municipal judge shall be a conservator of the peace. He shall keep a docket in which he shall enter every case commenced before him and the proceeding therein and he shall keep such other records as required. Such docket and records shall be records of the circuit court. The municipal judge shall deliver said docket and records and all books and papers pertaining to his office to his successor in office or to the presiding judge of the circuit. *The municipal judge shall have the power to* administer oaths and *enforce due obedience to all orders*, rules and judgments made by him, and may fine or imprison for contempt committed before such judge while holding court, in the same manner and to the same extent as a circuit judge.

(emphasis added).

Plaintiff brings her cause of action pursuant to 42 U.S.C. § 1983 and in her Complaint names the City of St. Louis and Defendant Turner as Defendants. Plaintiff does not deny that Defendant Turner and the City had jurisdiction over Plaintiff pursuant to the Truancy Ordinance. Plaintiff alleges that Defendant Turner sentenced her to forty-two days in jail without hearing any testimony or taking evidence; that no City truancy ordinance authorized such a sanction under the circumstances; that as a result Plaintiff was denied procedural due process rights guaranteed by the Fourteenth Amendment; that the City and Defendant Turner have a custom and practice of incarcerating parents of truant children even though no City truancy ordinance authorizes such a sanction; and that as a result of the conduct of the City and Defendant Turner, Plaintiff suffered damages. Plaintiff further alleges that the allegedly unlawful conduct on the part of the City and Defendant Turner was outrageous because of evil motive or reckless indifference to the constitutionally protected rights of Plaintiff. Pl. Facts, No. 21-42.

In their Motion for Summary Judgment, Defendants contend that Defendant Turner is not liable based on judicial immunity, qualified immunity, and immunity under the Eleventh Amendment and that the City cannot be held liable under a theory of Respondeat Superior.

**STANDARD FOR SUMMARY JUDGMENT**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function

is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendants' motions.

## DISCUSSION

**A.     Judicial Immunity:**

Defendants contend in their Motion for Summary Judgment that Defendant Turner is entitled to judicial immunity. Judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. Mireles, 502 U.S. at 11 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). Judicial immunity applies regardless of malice. Wiggens v. Hess, 531 F.2d 920 (8th Cir. 1976). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Mireles, 502 U.S. at 11 (quoting Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 646 (1872)). In Mireles, 502 U.S. at 10-12, the Supreme Court explained the limited circumstances under which judicial immunity can be overcome as follows:

> First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Forrester v. White, 484 U.S., at 227-229, 108 S.Ct., at 544-545; Stump v. Sparkman, 435 U.S., at 360, 98 S.Ct., at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357, 98 S.Ct., at 1104-1105; Bradley v. Fisher, 13 Wall., at 351.

8

... This court in Stump [v. Sparkman, 435 U.S.349 (1978),] made clear that "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S., at 362, 98 S.Ct., at 1108. See also Forrester v. White, 484 U.S., at 227-229, 108 S.Ct., at 544-545.

Thus, the particular act in question must be scrutinized and the court must "look to the particular act's relation to a general function normally performed by a judge." Id. at 13. Upon determining whether judicial immunity applies a court must inquire regarding the "'nature and function' of the act, not the 'act itself.'" Id. Where a judge's allegedly unlawful action was "taken in the very aid of the judge's jurisdiction over the matter before him – [such action] cannot be said to have been taken in the absence of jurisdiction." Id. See, e.g., Callahan v. Rendlen, 806 F.2d 795, 796 (8th Cir. 1986) (holding that judicial immunity applied and judge was entitled to summary judgment as a matter of law where judge had subject matter jurisdiction and acted throughout the proceeding in his judicial capacity). A judge "'does not act outside her jurisdiction simply because she makes an unconstitutional or unlawful decision.'" Mayorga v. State of Missouri, 2006 WL 798002, at *3 (8th Cir. Mar. 30, 2006) (quoting Patterson v. Von Riesen, 999 F.2d 1235, 1239 (8th Cir. 1993) (citing Liles v. Reagen, 804 F.2d 493, 495 (8th Cir. 1986)).

Judicial immunity applies to claims arising under 42 U.S.C. § 1983. Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005) (holding that officials are entitled to absolute immunity from civil rights suits for the performance of duties which are part of the judicial process); Callahan, 806 F.2d at 796 ("Judicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983."). In the context of an action brought pursuant to § 1983 by individuals who were found in contempt by a judge, the Eighth Circuit held in Liles, 804 F.2d at 495:

> In order to determine whether an act by a judge is "judicial," the Supreme Court has instructed us to consider whether the act is a function normally performed by a judge and whether the judge was interacting with the complaining party in a judicial

9

capacity. See Stump v. Sparkman, 435 U.S. at 360, 98 S.Ct. at 1106; White v. Bloom, 621 F.2d 276, 280 (8th Cir.1980). In this case, both factors indicate that Judge Reagan's actions were judicial acts. *Holding contempt proceedings, finding a party in contempt*, and ruling on a motion for recusal are all *acts normally performed by a judge*. Compare, White v. Bloom, 621 F.2d at 280 (permitting jury to be impaneled without the presence of the defendant held a judicial act) with Gregory v. Thompson, 500 F.2d 59, 64 (9th Cir.1974) (assault not a judicial act). Moreover, in appearing before the judge in the contempt proceedings and in bringing the motion to recuse, the *appellants were clearly interacting with Judge Reagan in his judicial capacity*.

(emphasis added).

The court in Liles further explained that the scope of jurisdiction within the context of judicial immunity must be broadly construed. Thus, judicial immunity lies unless there is a clear absence of all jurisdiction. Id. (citing Stump v. Sparkman, 435 U.S. 349, 356 (1978)). As such, actions which are in excess of a judge's jurisdiction, are not taken in the clear absence of jurisdiction. Id. "That a decision is arguably incorrect does not deprive the judge making it of jurisdiction. Id. (citing Stump, 435 U.S. at 355-56) (distinguishing "excess" of jurisdiction from "absence" of jurisdiction).

In the matter under consideration, Plaintiff contends that upon incarcerating Plaintiff Defendant Turner exceeded the authority vested in her by the City's Truancy Ordinance as this ordinance does not grant judges the authority to incarcerate parents of truant children. Defendants contend that Plaintiff was in contempt of the court's order of September 18, 2002, that Defendant Turner incarcerated Plaintiff because she was in contempt, and that Defendant Turner was acting pursuant to her authority to find Plaintiff in contempt of this order when she incarcerated Plaintiff. The court has found above for purposes of summary judgment and viewing the facts in the light most favorable to Plaintiff that Plaintiff was incarcerated because she violated the Truancy Ordinance.

The court will, therefore, proceed to consider whether Defendant Turner is entitled to judicial immunity. It undisputed that at all times material Plaintiff was properly before Defendant Turner pursuant to the City's Truancy Ordinance; that Plaintiff appeared before Defendant Turner in

10

Defendant Turner's capacity as a judge; that Plaintiff interacted with Defendant Turner in Defendant Turner's judicial capacity; and that Defendant Turner had the authority to find Plaintiff in violation of the Truancy Ordinance. Indeed, Plaintiff does not contend that she was innocent of a violation of the Truancy Ordinance nor she does allege that the Truancy Ordinance itself was invalid, void, or unconstitutional.

Under such circumstances, when examining the nature of Defendant Turner's act of incarcerating Plaintiff, Defendant Turner's incarcerating Plaintiff was taken in furtherance of the matter before her. See Mireles, 502 U.S. at 10-12. Moreover, incarcerating a party who violates the law is an act normally performed by a municipal court judge. See Mo. Rev. Stat. § 479.070; Mireles, 502 U.S. at 13; Liles, 804 F.2d at 495. Because the undisputed facts establish that Defendant Turner was performing a judicial act when incarcerating Plaintiff and because Defendant Turner had subject matter jurisdiction over Plaintiff's violation of the Truancy Ordinance, the court finds that Plaintiff cannot overcome Defendant Turner's judicial immunity even if Defendant Turner incarcerated Plaintiff for violating the Truancy Ordinance and even if such conduct was unconstitutional or unlawful. Mireles, 502 U.S. at 10-12. Moreover, upon incarcerating Plaintiff, Defendant Turner was not acting in complete absence of her jurisdiction; under the law cited above, Defendant Turner has judicial immunity because, at most, Defendant Turner was acting in excess of her jurisdiction if she incarcerated Plaintiff for violating the Truancy Ordinance. By acting in excess of her jurisdiction Defendant Turner did not lose the protection of judicial immunity according to the twofold test of Mireless, 502 U.S. at 10-12. The court finds, therefore, that the undisputed facts establish that

Defendant Turner is entitled to judicial immunity. Id. As such, the court finds that summary judgment should be granted in favor of Defendant Turner.[8]

**B.    The City's Liability:**

Plaintiff alleges that the City has a custom, policy, and practice of incarcerating the parents of truant children even though no City Ordinance authorizes such a sanction and that pursuant to such custom, policy, or practice, the City is liable for the incarceration of Plaintiff by Defendant Turner. Defendants argue in their Motion for Summary Judgment that Plaintiff's theory of liability on the part of the City is based on a respondeat superior theory and that such a theory is not applicable under 42 U.S.C. § 1983. The court finds, however, that a more accurate characterization of Plaintiff's legal theory applicable to the City's alleged liability is based on Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691, 694 (1978) (holding that the language of § 1983 "imposes liability on a government that, under color of some *official policy*, 'causes' an employee to violate another's constitutional rights"; for a municipality to be liable pursuant to §1983, a plaintiff must establish that he or she suffered injury resulting from "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy") (emphasis added).

The issue before the court is whether the City has the custom and/or policy requisite for liability based on Defendant Turner's incarceration of Plaintiff. Monell, 436 U.S. at 691. To establish custom and/or policy of the City, Plaintiff argues that the City has control over Defendant Turner and that it has adopted her acts of incarcerating persons found to have violated the Truancy Ordinance.

---

[8] Because the court has found that the undisputed facts establish that Defendant Turner is entitled to judicial immunity the court need not address Defendants' argument that Defendant Turner is entitled to qualified immunity and to Eleventh Amendment immunity.

Plaintiff does provide deposition testimony of municipal court judges who state that they were aware of Defendant Turner's incarcerating parents who violated the City's Truancy Ordinance. For example, Plaintiff Granda provides deposition testimony of the judge who succeeded Defendant Turner as Administrative Judge; this municipal judge states that she spoke to Defendant Turner about incarcerating persons who violated the Truancy Ordinance. Pl. Facts 34-35. Plaintiff also provides deposition testimony of a another municipal judge who testified that he was aware that Defendant Turner jailed people who were charged with violation of the Truancy Ordinance and that he discussed this matter with Defendant Turner. Pl. Facts 37-39. Also, Plaintiff cites testimony of a municipal judge who states that he told the Deputy City Marshal that a juvenile, not the juvenile's parents, was improperly incarcerated. Pl. Fact 31. Plaintiff further alleges that the Mayor of the City was aware that Plaintiff incarcerated parents of truants. Plaintiff, however, suggests no conduct on the part of the City apart from that of Defendant Turner involving the incarceration of the parents of truants.

To prove custom, a plaintiff must demonstrate "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir.1990) (citing Monell, 436 U.S. at 691). Custom cannot be satisfied by a single incident of misconduct. Rather, custom consists of practices so permanent that they have the force of law. Monell, 436 U.S. at 691. To establish a constitutional violation resulting from such a custom a "plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." Russell v. Hennepin County, 420 F.3d 841, 849 (8th Cir. 2005) (citing Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir.1996) (en banc)). "A 'policy' is a 'deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible

[under state law] for establishing final policy with respect to the subject matter in question.'" Id. at 847 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (internal citations omitted). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Id. (citing Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 906 (8th Cir.1999)).

Thus, to prevail on her claim against the City Plaintiff must establish that, upon incarcerating Plaintiff, Defendant Turner was enforcing an unconstitutional policy or custom of the City. The allegedly unconstitutional custom or practice alleged by Plaintiff on the part of the City is that of "incarcerating the parents of truant children, even though no St. Louis City truancy ordinance authorizes such a sanction." Compl., ¶ 9. The allegedly unconstitutional incarceration was ordered only by Defendant Turner. Moreover, the undisputed facts as set forth above do not establish a widespread or a persistent pattern or that any City official made a deliberate choice to incarcerate violators of the Truancy Ordinance; rather, it was Defendant Turner's independent decision to incarcerate violators of the Truancy Ordinance.[9] Monell, 436 U.S. at 691-94. Other judges who knew of Defendant Turner's conduct were no more policy makers than Defendant. Although the Mayor and other judges allegedly knew of Defendant Turner's conduct, mere awareness does not create a custom or policy on the party of the City. Russell, 420 F.3d at 849. Indeed, no City official including the Mayor or other judges had control over Defendant Turner's judicial acts; they did not have the authority to stop Defendant Turner from incarcerating persons who violated the Truancy Ordinance. Under such circumstances it cannot be said that the Mayor and other judges were

---

[9] Plaintiff makes the unsupported statement that municipal judges are, *by law*, policy makers because they are appointed by and can be removed by the mayor. Plaintiff provides no legal support nor has the court's research revealed such support for this legal conclusion. It goes without saying that judges are members of the judicial branch of government, not the policy making executive or legislative branches.

14

deliberately indifferent to or tacitly authorized Defendant Turner's conduct in such a manner as to create custom or policy. Russell, 420 F.3d at 849; Jane Doe A, 901 F.2d at 646. As such, Plaintiff does not allege facts to suggest that the City had a custom or policy which involved an unconstitutional practice of incarcerating violators of the City's Truancy Ordinance. Id. The court finds, therefore, that summary judgment should be granted in favor of the City because the undisputed facts do not establish an unconstitutional custom, policy, or practice on the part of the City which was implemented by Defendant Turner and which resulted in injury to Plaintiff.

To the extent that Defendants argue that the City's liability cannot be based on respondeat superior, Monell holds that the doctrine of respondeat superior is not a basis to establish liability under 42 U.S.C. § 1983. 436 U.S. at 691 ("Congress did not intend municipalities to be held liable [pursuant to §1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."); Tilson v. Forrest City Police Dept., 28 F.3d 802, 806 (8th Cir. 1994) ("For the jury to have found the Department or [the chief of police] liable in this § 1983 action, it must have had before it evidence of their direct participation. ... Simply put, the evidence before this jury must have allowed it to identify (1) action on the part of [the chief of police] or the Department causing (2) one or more constitutional violations."). In other words, Congress did not intend for a municipality to be liable under § 1983 where "causation [is] absent." Monell, 436 U.S. at 692. See also Mayorga, 2006 WL 798002, at *3 (quoting Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing Rizzo v. Goode, 423 U.S. 362, 370-71 (1976) ("'Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.'"). Thus, Defendants correctly assert that the City cannot be found liable in the matter under consideration merely on a respondeat

superior theory. Indeed, the facts upon which Plaintiff relies do not establish or suggest the causation necessary to impose municipal liability. Mayorga, 2006 WL 708002, at *3.

The court finds, therefore, that summary judgment should be granted in favor of the City.

## CONCLUSION

For the reasons more fully set forth above, the court finds that the undisputed facts establish that Defendant Turner is entitled to judicial immunity in regard to all allegations against her and that, therefore, summary judgment should be granted in favor of Defendant Turner. The court also finds that the undisputed facts establish that summary judgment should be granted in favor of the City in regard to Plaintiff's allegation that the City should beheld liable pursuant to § 1983.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendants the City of St. Louis and Bettye Battle-Turner is **GRANTED**; (Doc. 17)

**IT IS FURTHER ORDERED** that a separate Judgment shall issue incorporating this Memorandum Opinion.

/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of April, 2006.